JS6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAUL VILLALOBOS, | Case No. 2:25-cv-09678-MAR |
| Plaintiff, | |
| v. | ORDER GRANTING MOTION TO REMAND, DKT. 9 |
| GENERAL MOTORS, LLC, | |
| Defendant. | |

## I.

## **SUMMARY OF ORDER**

Plaintiff Saul Villalobos ("Plaintiff") filed the instant action in Los Angeles County Superior Court on September 5, 2025.  ECF Docket No. ("Dkt.") 1-1. Defendant General Motors, LLC ("Defendant" or "GM") removed the matter to this Court on October 9, 2025.  Plaintiff now moves to remand to state court, arguing that Defendant has failed to establish that this Court has subject matter jurisdiction.  Dkt. 9.  For the reasons stated below, the motion is **GRANTED**.

## II.

## **BACKGROUND**

On September 5, 2025 Plaintiff filed a complaint in Los Angeles County Superior Court alleging violations of California's Song-Beverly Consumer Warranty

Act.[1]  Complaint ("Compl."), Dkt. 1-1 at 1-4.  Plaintiff alleges that he purchased a 2020 Chevrolet Camaro that was covered by Defendant's vehicle warranty.  Id. ¶¶ 6, 9, 11.  Plaintiff further alleges that the car developed defects, including "engine and transmission presentations," covered by Defendant's warranty.  Id.¶ 12.  Plaintiff also alleges that, although he brought the vehicle in for repairs, Defendant failed to repair the defects within a reasonable number of attempts.  Id. ¶¶ 13–14.  The Complaint does not state the amount Plaintiff paid for the car, but seeks, among other things, actual damages, restitution, "a civil penalty in the amount of two times Plaintiff's actual damages," and attorneys' fees.  Id. at 5.

On October 9, 2025, Defendant removed the matter to this Court, asserting that "[i]n the last 30 days, GM . . . conducted a preliminary investigation and determined that Plaintiff's citizenship and the reasonable, non-speculative estimation of the amount in controversy placed at issue through Plaintiff's allegations plausibly give rise to subject matter jurisdiction."  Dkt. 1 ("Notice of Removal") at 2.  The Notice of Removal asserted that "GM has estimated the purchase price of the subject 2020 Chevrolet Camaro to be $42,524.76," and that, after "statutorily required deductions," Plaintiff's actual damages are approximately $33,484.32.  Id. at 5.

Plaintiff now moves to remand to state court.

## III.

## LEGAL STANDARD

District courts have original diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States."  28 U.S.C. § 1332(a).  A defendant may remove a case from state court to federal court if the case could have

---

[1] Although Plaintiff's Motion states that the Complaint also alleges a claim pursuant the federal Magnuson-Moss Warrant Act (Motion, Dkt. 9 at 1:7–8), that does not appear to be the case.

2

originally been filed in federal court. See 28 U.S.C. § 1441(a). The case must, however, be remanded to state court if, at any time before final judgment, it appears that the federal court lacks subject matter jurisdiction. See 28 U.S.C. § 1447(c); Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund, 500 U.S. 72, 87 (1991). Federal courts "strictly construe the removal statute against removal jurisdiction," such that any doubt as to the propriety of removal is resolved in favor of remanding the case to state court. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). A removing defendant bears the burden of proving federal jurisdiction. See Luther v. Countrywide Home Loans Servicing, LP, 533 F.3d 1031, 1034 (9th Cir. 2008); Gaus, 980 F.2d at 566.

## IV.

## DISCUSSION

Plaintiff contends that Defendant has failed to establish that the amount in controversy exceeds $75,000. Mot. at 5. Defendant must therefore establish by a preponderance of the evidence that the amount in controversy satisfies the statutory threshold. See Ramirez v. Volkswagen Grp. of Am., Inc., No. CV2200734MWFMRWX, 2022 WL 2610247, at *1 (C.D. Cal. July 8, 2022). Plaintiff's Complaint seeks, among other things, actual damages, civil penalties, and attorney's fees. Compl. at 5. "Actual damages under the Song-Beverly Act are equal to the actual price paid or payable by the buyer, minus the reduction in value directly attributable to use by the buyer." Lukas v. Gen. Motors, LLC., No. 2:25-CV-08305-WLH-MAA, 2025 WL 3456648, at *5 (C.D. Cal. Dec. 1, 2025) (quoting Cal. Civ. Code § 1793.2(d)(2)(B)–(C) (internal quotation marks omitted). A plaintiff who shows a willful violation of the Song-Beverly Act may recover a civil penalty of up to two times the amount of actual damages. Cal. Civ. Code § 1794(c). A prevailing plaintiff is also entitled to attorney's fees. Cal. Civ. Code § 1794(d).

3

As an initial matter, Plaintiff's assertion that "Defendant has *made no attempt* to furnish . . . evidence here" mischaracterizes the record.  Reply at 2:8 (emphasis original).  In opposition to the instant motion, GM has submitted (1) Plaintiff's Retail Installment Sale Contract ("RISC") (Dkt. 11-2) and (2) a Warranty Transaction History Detail ("Repair History"), listing the repair history for Plaintiff's vehicle.  Dkt. 11-3.  "Courts routinely find that an undisputed Retail Installment Sales Contract can establish actual damages."  Luna v. FCA US LLC, No. 21-CV-01230-LHK, 2021 WL 4893567, at *7 (N.D. Cal. Oct. 20, 2021).

Using the RISC as a starting point, Defendant here proceeds to speculate as to how many loan payments Plaintiff has made to date and is likely to make "prior to resolution of this matter," while acknowledging that "this value is not certain without Plaintiff's loan payment history."  Opp. at 6:1–2, 9.  As courts have recognized, however, uncertainties regarding payments and finance charges complicate efforts to calculate actual damages.  See Tutunik v. Mercedes-Benz USA, LLC, No. 2:25-CV-01235-JLS-ADS, 2025 WL 1843229, at *2 (C.D. Cal. Mar. 28, 2025); Luna, 2021 WL 4893567, at *7; Messih v. Mercedes-Benz USA, LLC, No. 21-CV-03032-WHO, 2021 WL 2588977, at *4 (N.D. Cal. June 24, 2021).  Accordingly, courts often look to the "total cash price" as the "most appropriate measure of actual damages."  Cabrera v. FCA US LLC, No. EDCV-21-1501-JGBS, 2022 WL 310133, at *3 (C.D. Cal. Feb. 1, 2022); see also Garrett v. Mercedez-Benz USA, LLC, No. EDCV23223JGBSPX, 2023 WL 2813564, at *3 (C.D. Cal. Apr. 6, 2023); Luna, 2021 WL 4893567, at *7; Messih, 2021 WL 2588977, at *4.

The Court begins, then, with the cash price identified by Defendant: $29,966.36.[2]  Opp. at 5:24.  That figure must then be reduced by statutory offsets,

---

[2] The Court notes that the "Total Cash Price" on the RISC, although somewhat illegible, appears to be $35,917.32, inclusive of such line items as an "Electronic Vehicle Registration or Transfer Charge," unspecified "PHD Products," and a "Debt Cancellation Agreement."  RISC at 2.  The applicability of these charges is not clear, as, for example, Plaintiff's 2020 Camaro does not appear to be an electric vehicle.  In

such as for mileage attributable to Plaintiff.  Lukas, 2025 WL 3456648, at *5.  Mileage bears on actual damages insofar as it translates to a reduction in a vehicle's value attributable to a "buyer prior to the time the buyer first delivered the vehicle . . . for correction of the problem that gave rise to the [warranty dispute]."  Cal. Civ. Code § 1793.2(d)(2)(C).  By statute, that reduction in value is calculated "by multiplying the actual price of the new motor vehicle . . . by a fraction having as its denominator 120,000 and having as its numerator the number of miles traveled."  Id.  Thus, the higher the mileage, the higher the reduction in value, and the lower a plaintiff's actual damages.

The relevant numerator is the number of miles on the odometer at the time of the "first repair for a nonconformity."  Garett, 2023 WL 2813564, at *3; see also Luna, 2021 WL 4893567, at *7; Messih, 2021 WL 2588977, at *4; Gerber, 2017 WL 2705428, at *3; Alvarado v. Fca US, LLC, No. EDCV17505JGBDTBX, 2017 WL 2495495, at *4 (C.D. Cal. June 8, 2017).  Here, Defendant submits that that figure is 25,166 miles.  Opp. at 5:20.  As stated above, Plaintiff asserts that this figure is not grounded in evidence, and has been "arbitrarily chosen."  Reply at 2:20.  The vehicle repair history, however, does indicate that Plaintiff brought the vehicle in at 25,166 miles for "Transmission Control Assembly Replacment, Add Jumper Harness," and the Complaint alleges that the covered vehicle defects include "transmission presentations."  Repair History at 2; Compl. ¶ 12.  Defendant's use of 25,166 miles to calculate the offset is not, therefore, arbitrary.  At the same time, however, the Repair History does not indicate that Defendant failed to repair a "transmission presentation" after a reasonable number of attempts.  Indeed, the Repair History does

any event, the Court begins with the $29,966.36 figure because that is the figure utilized by Defendant itself in calculating the statutory mileage offset, as well as because any doubts as to the amount in controversy must be resolved in Plaintiff's favor.  Gaus, 980 F.2d at 566 (9th Cir. 1992).

5

not indicate any transmission-related repair efforts other than Plaintiff's visit at 25,166 miles..

The Repair History does, however, indicate an engine-related "Engine Coolant Thermostat Housing Replacement" at 26,256 miles.  Repair History at 1.  Plaintiff also appears to have brought the car in at 40,229 miles for another engine-related issue, "Camshaft Position Actuator Valve Solenoid Replacement."  Id.  Because Defendant refers only to the single transmission-related repair, discussed above, and makes no mention of any engine-related repair efforts, it is unclear whether the two subsequent, consecutive engine repairs are related to each other or whether either forms the basis for Plaintiff's Complaint.  This alone might warrant remand for failure to satisfy the amount in controversy requirement.  See, e.g., Perez v. Gen. Motors LLC, No. 2:25-CV-09684-MCS-PVC, 2025 WL 3171905, at *2 (C.D. Cal. Nov. 13, 2025) ("Defendant . . . provides no evidence about the actual substance of the . . . repair visit.  Without those facts, the Court cannot determine whether that early visit has anything to do with the defects Plaintiffs claim in this case.").  Given the Complaint's allegation of "engine presentation" defects, however, and the two consecutive engine-related repair visits, the Court will utilize the 26,256 mileage figure at the time of the first engine-related repair to calculate the offset, which results in $6,556.64 attributable to Plaintiff and a resulting vehicle value figure of $23,410.02.[3] From that number, Defendant concedes that a further $1,500 must be deducted to account for a manufacturer's rebate.  Opp. at 5:25 (citing Cal. Code of Civ. Proc. § 871.27(d) ("[A] manufacturer's rebate[] shall not be included in the calculation of the actual price paid."); see also Stewart v. Gen. Motors LLC, No. 2:25-CV-07153-SPG-MAA, 2025 WL 2848991, at *3 (C.D. Cal. Oct. 7, 2025) (describing statutory offsets for rebates, etc.).  Accordingly, Defendant's actual damages are $21,490.02.

---

[3] $29,966.36 x (26,256/120,000) = $6,556.64.  $29,966.36 - $6.556.64 = $23,410.02.

Those damages alone do not meet the $75,000 jurisdictional threshold. Plaintiff's Complaint, however, also seeks civil penalties of up to two times his actual damages. "The Ninth Circuit routinely considers civil penalties when deciding whether the amount-in-controversy requirement has been satisfied." Wang v. FCA US LLC, No. 8:24-CV-02060-JWH-KES, 2025 WL 1218745, at *2 (C.D. Cal. Apr. 28, 2025) (collecting cases); but see, e.g., Perez, 2025 WL 3171905, at *3 (acknowledging split among courts and declining to consider civil penalties in calculating amount in controversy). Taking those penalties into account yields a figure of $64,470.06, an amount that nevertheless remains insufficient to satisfy the amount in controversy requirement.

Defendant also argues, briefly, that the amount in controversy will exceed $75,000 if attorney's fees are taken into account because, "based on GM's counsel's prior experience with fees sought by Plaintiff's counsel, . . . it would be appropriate to include at least $15,000 in future attorney's fees in addition to past fees." Opp. at 9:26–10:1. For support, Defendant cites to its own counsel's declaration, which does not give a dollar amount, but rather states only that, "[b]ased on initial negotiations with Plaintiff's counsel, this case is unlikely to resolve early and Plaintiff will seek significant past and future attorneys' fees for work performed on this case." Declaration of Sarah Garbuzov, Dkt. 11-1 ¶ 6. Some courts in the Ninth Circuit decline to apply attorney's fees in Song-Beverly cases toward the amount in controversy at all, finding estimates of such fees to be too speculative. See, e.g., Sanchez v. Ford Motor Co., No. 218CV08023RGKSKX, 2018 WL 6787354, at *1 (C.D. Cal. Dec. 4, 2018) (collecting cases). But even those courts that are willing to consider the possibility of fees require some evidence of likely fees. See, e.g., Perez, 2025 ("Defendant's counsel's declaration regarding his estimate of Plaintiffs' counsel's anticipated expenditures on this case is not grounded in his personal knowledge, let alone any explanation of how or why fees in this case should be valued at $15,000.");

<u>Garrett</u>, 2023 WL 2813564, at *5 (C.D. Cal. Apr. 6, 2023) ("MBUSA has not submitted a declaration that includes, for example, typical hourly rates in Song-Beverly Act cases or billing records from past cases handled by counsel. Courts consistently reject this kind of barebones showing, which falls far short of summary judgment-type evidence.") (internal citation and quotation marks omitted) (collecting cases); <u>Ramirez</u>, 2022 WL 2610247, at *5 ("Defendant here does not present argument on *why* this case would result in a specific attorney's fee award based on other cases with comparable facts. . . . Without such a comparison, the Court cannot find — even by a preponderance of the evidence — that attorneys fees in any particular amount should be included in the amount in controversy.") (internal citation and quotation marks omitted).  Similarly here, GM's counsel's speculative, self-serving estimate of Plaintiff's possible fees is not sufficient to carry Defendant's burden.

Absent competent evidence of attorney's fees, Defendant has demonstrated an amount in controversy of only $64,470.06, and therefore has failed to establish that this Court has subject matter jurisdiction under 28 U.S.C. § 1332(a).

## V.

## <u>CONCLUSION AND ORDER</u>

For the reasons stated above, Plaintiff's Motion to Remand is **GRANTED.**

**IT IS THEREFORE ORDERED**:

This action is **REMANDED** to Los Angeles County Superior Court.

Dated:  May 18, 2026

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge

8